# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 47437

STATE OF IDAHO )
)
   Plaintiff-Respondent, )
)
v. )
)
RICHARD LOWELL HESS, )
)
   Defendant-Appellant. )
)

**Boise, January 2020 Term**

**Opinion Filed: April 30, 2020**

**Karel A. Lehrman, Clerk**

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Deborah A. Bail, District Judge.

The decision of the district court is vacated in part and affirmed in part.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for Appellant. Kimberly A. Coster argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Jeffery D. Nye argued.

_____

BURDICK, Chief Justice.

Richard Lowell Hess appeals from the district court's award of restitution entered against him under Idaho Code section 37-2732(k). Based on Hess's plea agreement, the district court entered an order of restitution in the sum of $8,116.35 to several law enforcement agencies following Hess's guilty plea to felony trafficking in heroin. On appeal, Hess relies on this Court's decision in *State v. Nelson*, 161 Idaho 692, 390 P.3d 418 (2017), to argue that there is insufficient evidence to support all but $1,500 of the award. The Court of Appeals reversed the restitution order, and we granted the State's timely petition for review. For the reasons below, we vacate in part and affirm in part.

1

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In February 2016, a Boise Police Department task force, BANDIT[1], arranged for a confidential informant to purchase heroin from Hess, staging two "controlled buys." The first took place on February 17, 2016, during which Hess sold two grams of heroin for $600 and the other took place a week later during which Hess sold two grams of heroin for $500. A grand jury indicted Hess on two counts of trafficking in heroin in violation of Idaho Code section 37-2732B(a)(6)(A) and a warrant was issued for his arrest.

Police arrested Hess in November 2016 after they observed him during a drug deal. Upon arrest, Hess informed police that he had heroin and around $10,000 in cash in a safe at his home. With Hess's written consent to search his room, police found over 35 grams of heroin. The State charged Hess in a second criminal case with felony trafficking in heroin in violation of Idaho Code section 37-2732B(a)(6)(C).

Hess entered into a plea agreement with the State in which he pleaded guilty to an amended charge of felony trafficking in heroin in violation of Idaho Code section 37-2732B(a)(6)(B) and the State agreed to move to dismiss the controlled-buy charges. As part of that plea agreement, Hess agreed to pay restitution in an amount to be determined at sentencing.

Prior to sentencing, the State filed restitution documents, including:

- An Idaho State Police request for $200.00 for lab tests from the first controlled buy;
- A second Idaho State Police request for an additional $200.00 for lab tests from the consent-search;
- An Ada County Prosecutor's Office request for $391.95 for the costs of prosecution in the form of a "Certificate of Records";
- A BANDIT request form for $7,324.40 for the costs of investigation comprised of:
  - $5,603.20 for "investigative hours";
  - $121.20 for "overtime hours"; and
  - $1,600 for "evidence purchases."

A few weeks later, the State filed the presentence report and accompanying documents. Within that filing were the police reports (including evidentiary forms and photo logs) and Idaho State Police substance analyses stemming from the first-controlled buy, the second-controlled buy, and Hess's subsequent arrest and search.

---

[1] Although not defined anywhere in the record, BANDIT appears to be an acronym standing for "Boise Area Narcotics and Drug Interdiction Task Force."

The parties did not address restitution until the sentencing hearing. There, Hess did not object to the $400 in "lab fees" and conceded that $1,100 of the "evidence purchases" were properly awardable. However, Hess objected in general terms to the remaining portions of the State's request. He voiced not only a general objection to the request for prosecution costs, but he also specifically argued that BANDIT's request for investigative costs was not supported by sufficient detail based on the nature of the investigation.

The district court overruled Hess's objection. It determined that there was "sufficient documentation to warrant the State's restitution order" based on "the police reports and other materials submitted in connection with the presentence report[.]" The district court sentenced Hess and entered an order for restitution granting the State's request in its entirety.

Hess's appeal was assigned to the Court of Appeals, which reversed and remanded the district court's order awarding restitution. We granted the State's timely petition for review.

## II.     ISSUE ON APPEAL

Is the district court's award of restitution under Idaho Code section 37-2732(k) supported by substantial evidence?

## III.     STANDARD OF REVIEW

We review a district court's decision to award restitution under Idaho Code section 37-2732(k) for an abuse of discretion. *State v. Cunningham*, 161 Idaho 698, 700, 390 P.3d 424, 426 (2017) (*Cunningham I*). Accordingly, this Court uses the four-part *Lunneborg* standard to determine whether the district court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 873, 421 P.3d 187, 204 (2018). To comply with sub-parts 2–4 of the *Lunneborg* standard, the district court must "base the amount of restitution upon the preponderance of evidence submitted by the prosecutor, defendant, victim, or presentence investigator." *Cunningham I*, 161 Idaho at 700, 390 P.3d at 426 (quoting *State v. Weaver*, 158 Idaho 167, 170, 345 P.3d 226, 229 (Ct. App. 2014)).

## IV.     ANALYSIS

Hess argues that certain amounts of the restitution award are not supported by substantial evidence. He contends that the State failed to produce evidence showing that the expenses were "actually incurred" as required under this Court's decisions in *State v. Cunningham*, 161 Idaho

3

698, 390 P.3d 424 (2017) (*Cunningham I*) and *State v. Nelson*, 161 Idaho 692, 390 P.3d 418 (2017). Under this theory, Hess disputes both the award of prosecution costs and portions of the award of investigative costs. For the reasons below, we determine that $500 of the district court's award of investigation costs is unsupported by the evidence. However, the district court correctly awarded the remaining amounts of restitution because (A) Hess failed to preserve his foundational objections and (B) substantial evidence supports the award.

**A. Hess failed to preserve his arguments regarding the admissibility of the "Certificate of Records" and the BANDIT request form.**

Hess's appellate arguments concern both the "Certificate of Records" and the BANDIT request form. Generally, he claims both documents are deficient because they fail to measure up to what this Court has required to support prosecution costs in *Cunningham I*, 161 Idaho 698, 390 P.3d 424 and *Nelson*, 161 Idaho 692, 390 P.3d 418. Based on the nature of his arguments below, we determine Hess has failed to preserve his foundational objections for either document.

Under Idaho's Uniform Controlled Substances Act, a court may award restitution to law-enforcement agencies for costs "actually incurred" in investigating and prosecuting a drug-related offense. I.C. § 37-2732(k). Measuring up to section 37-2732(k)'s standard of "actually incurred" requires a district court's grant of restitution to be supported by substantial evidence. *Cunningham I*, 161 Idaho at 702, 390 P.3d at 428. "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *State v. Straub*, 153 Idaho 882, 885, 292 P.3d 273, 276 (2013) (citation omitted). Generally, a party may challenge the sufficiency of the evidence for the first time on appeal. *State v. Villa-Guzman*, 166 Idaho 382, 384, 458 P.3d 960, 962 (2020) (citing *State v. Yeoumans*, 144 Idaho 871, 873, 172 P.3d 1146, 1148 (Ct. App. 2007)).

But while a party may challenge the sufficiency of the evidence (i.e. the *quantum* of evidence) for the first time on appeal, this Court has long required objections to the *admissibility* of evidence to be raised below. *Id*. To preserve an evidentiary objection for appellate review, "either the specific ground for the objection must be clearly stated, or the basis of the objection must be apparent from the context." *State v. Almaraz*, 154 Idaho 584, 602, 301 P.3d 242, 260 (2013) (quoting *State v. Sheahan*, 139 Idaho 267, 277, 77 P.3d 956, 966 (2003)); I.R.E. 103(a)(1)(B). The rules of evidence generally apply to restitution hearings under section 37-2732(k), *see* I.R.E. 101(d)(7), including the admission of hearsay in some cases. *See State v. Cunningham*, 164 Idaho 759, 763, 435 P.3d 539, 543 (2019) (*Cunningham II*). We have recently

held that any alleged error based on a defect in the documentary evidence supporting a restitution request is a foundational objection, and thus, must be first made below to be preserved for appellate review. *Villa-Guzman*, 166 Idaho 382, 384, 458 P.3d 960, 962 (2020).

Here, no written objection to the State's restitution request appears in the record. Rather, Hess's objection is limited to the following statements made at the sentencing hearing:

> Your Honor, with regards to the restitution, we do object to the costs of prosecution as well as the BANDIT. The information I was provided with regards to the BANDIT reimbursement, simply just lists the number of hours of investigation. I don't think we would object to the monies, the $1,100, that were used as the buy money, but I don't have any detailed information as to the level of their investigation to get that amount. I think it's $5,900 was the amount that they're asking reimbursement for their BANDIT investigation, and to know that the majority of the substance that was obtained was hand-delivered by [Hess], and so we would object to the cost of prosecution and the BANDIT amount.

The district court overruled the objection by noting that "there is sufficient documentation to warrant the State's restitution order" based on "the police reports and other materials submitted in connection with the presentence report[.]"

Hess's objection to the prosecution and investigative costs is deficient under Idaho Rule of Evidence 103 because it lacks the specificity required of evidentiary objections. *See* I.R.E. 103(a)(1)(B). And while his objection regarding the investigative costs provides some level of elaboration, that objection is better characterized as an *argument* asserting that the sum requested by BANDIT is unsupported by the evidence. In short, Hess's argument is geared toward the *quantum* of evidence supporting the request rather than the *admissibility* of the BANDIT request form itself.

To explain, it's useful to understand the document Hess attacks on appeal. The BANDIT request form is a one-page summary of the costs claimed by the Boise Police Department as a result of Hess's investigation. The Boise Police Department submitted the form to the prosecutor's office which then submitted it to the district court. The document provides a case number as well as four "DR numbers" which reference the police reports supplied by the State as part of the PSI documents. It further lists the date of incident as **"**11/4/15 - 11/30/16" which corresponds with the dates of the police reports. Through the request, BANDIT sought restitution for "investigative hours" ($5,603.20); "overtime hours" ($121.20); and "evidence purchases" ($1,600.00). It contains the electronic signature of a Narcotics Lieutenant and indicates that "supporting documents are available if necessary."

With this understanding, Hess's arguments below did not ask the district court to exclude the BANDIT request form on an evidentiary basis. Rather, Hess referenced the "lack of detail" in the "information" he was provided to argue that the *sums* requested in the BANDIT request form were not supported by substantial evidence. This argument relied on comparison between the requested sums and the fact that Hess "hand-delivered" the drugs—the inference being that the requested sums were not proportional to the investigation. Thus, this argument does not rely on an evidentiary defect *in the document itself*.

An evidentiary objection to the admissibility of evidence requires a specific objection—an argument based on the lack of evidence supporting a restitution request does not. Here, Hess's argument falls into the latter category. And even though the "basis of the objection [can] be apparent from the context," there is nothing in the record to suggest that the basis of Hess's objection advanced any of the admissibility argument he now asserts on appeal. In fact, the district court's ruling addressed only whether the evidence provided supported the sum requested by the State. In direct response to Hess's argument, the court referenced the police reports. Viewing these reports along with other documents in the record, the district court ruled that the State's request was supported by the evidence: "[I]t seems to me in looking at the police reports and the other materials submitted in connection with the presentence report, that there is sufficient documentation to warrant the state's restitution order . . . ." As such, the district court never addressed the admissibility of the BANDIT request form. So, if Hess's counsel intended to object to the admissibility of the BANDIT request form rather than the quantum of evidence supporting the sums requested, he was obligated to follow up and seek an adverse ruling on that objection.

As a result, Hess has failed to preserve his arguments regarding the admissibility of the evidence supporting the prosecution and investigative costs. *See State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019) ("We will not hold that a trial court erred in making a decision on an issue or a party's position on an issue that it did not have the opportunity to address."). Had Hess appropriately articulated his foundational arguments below, the district court could have addressed them, the State could have cured the defects, or either party could have requested an evidentiary hearing. *See Villa-Guzman*, 166 Idaho at 384, 458 P.3d at 962 (commenting that foundational error in documents supporting restitution awards "can easily be remedied in the trial court by counsel making a contemporaneous objection."). Since Hess has failed to preserve those objections, we do not address them on appeal. This includes all of Hess's arguments relating to the

6

prosecution costs because his foundational claims were his sole basis to argue that the district court's award was not supported by substantial evidence. However, we must still address Hess's contention that the investigative costs are not supported by substantial evidence because those objections were not solely based on admissibility concerns.

**B. Except for $500 awarded for evidence purchases, the district court's award of investigation costs is supported by substantial evidence.**

Hess urges this Court to determine that the BANDIT request form lacked sufficient detail to constitute substantial evidence to support the award of costs. He argues that the BANDIT request form is the sole evidence supporting the district court's decision to award restitution for "investigation hours" or "overtime hours." He emphasizes that the document is unsworn and fails to delineate the time spent performing specific tasks by any particular employee. We conclude that the district court's award of restitution—with the exception of the disputed $500 in "evidence purchases"—is supported by substantial evidence.

As explained in the previous section, Hess's counsel's argument went to the quantum of evidence supporting the award rather than the admissibility of the BANDIT request form. Accordingly, we address only Hess's argument that go toward the quantum of evidence, rather the admissibility of the documentary evidence.

To start, the State concedes that $500 of the $1,600 requested for "evidence purchases" is not supported by substantial evidence in the record. We accept that concession. However, outside of this concession, the district court's award of the investigative costs is supported by substantial evidence. The BANDIT request form was not the sole evidence supporting the State's request nor the district court's award. Rather, the district court correctly noted that documents in the record contradicted Hess's argument that BANDIT's investigation was not proportional to the sum it requested. Specifically, the police reports provided in support of the State's request supplied additional evidence to support the award of restitution. Hess did not object to these documents and the reports reveal that the investigation into Hess's drug-dealing operation involved much more than a simple hand-to-hand drug deal.

For the first charges, BANDIT detectives monitored Hess before, during, and after the controlled buys. For each controlled buy, BANDIT held a "preoperational briefing" to educate detectives and officers about Hess, his suspected operation, and the planned controlled buy. Immediately preceding the controlled buys, two detectives met with the confidential informant, thoroughly searched him and his vehicles for contraband, fitted him with an audio transmitting

7

device, and provided him with pre-recorded buy money. Surveillance units observed Hess leave his house and two detectives tailed the controlled informant to the purchase point. After the transaction, the two detectives followed the confidential informant to a prearranged location where the informant turned over the heroin and identified Hess in a mugshot. A detective transported the heroin to the BANDIT office where it was weighed, photographed, and tested. The detective then submitted the heroin to the Property and Evidence Unit for further testing.

The police reports on Hess's second set of charges reveal that Hess's arrest was no less complex. The arrest involved two police officers, multiple BANDIT detectives, and a K-9 unit. Once officers obtained permission to search Hess's room at his mother's house, two detectives conducted the search and documented the evidence found. These reports, along with photographic and documentary evidence in the pre-sentence report, provide sufficient narrative detail to support the district court's award of restitution.

In sum, taking into consideration the BANDIT request form alongside the police reports and supporting documents, the district court's award of restitution for investigative costs is supported by substantial evidence.

## V.    CONCLUSION

For the above reasons, we determine that the district court abused its discretion by awarding the disputed $500 in "evidence purchases" because that amount is not supported by substantial evidence. Accordingly, we vacate the restitution order with instructions to reenter the order without the disputed $500 of "evidence purchases" awarded to the Boise Police Department. The remainder of the district court's restitution order is affirmed.

Justices BRODY, BEVAN, STEGNER and MOELLER **CONCUR.**